IRVING SILVER AND ANOTHER,
INDIVIDUALLY AND d.b.a. SILVER'S FOOD
MARKET, v. CITY OF MINNEAPOLIS.

170 N. W. (2d) 206.

August 1, 1969—No. 41654.

*Robins, Davis & Lyons* and *Stephen A. Krupp,* for appellants.
*Keith M. Stidd,* City Attorney, and *George V. Johnson,*
First Assistant City Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court granting
defendant's motion for summary judgment and dismissing plain-
tiffs' complaint on the merits.

The facts are not seriously in dispute. The action arises out
of a disturbance which occurred in the Plymouth Avenue North
area of Minneapolis on July 19, 20, and 21, 1967. Plaintiffs,
Irving and Ethel Silver, are the owners of certain real estate

located at 1709-1711 Plymouth Avenue North. On July 19, 1967, a riot occurred in that area during which windows were broken in plaintiffs' store by rioters. This was investigated by the Minneapolis Police Department. According to plaintiffs, they received indications that their building and store were being threatened by further damage in riots that might follow. During the July 19 riot, looting occurred and a number of business and commercial properties along Plymouth Avenue were damaged or destroyed.

According to plaintiffs, after they had received indications that their building and store were being threatened by further damage they boarded up the windows and doors and contacted the police concerning the threats. In his deposition, plaintiff Irving Silver indicated the police responded as follows:

"He says, Mr. Silver, he says, we know about it and we are going to have some extra police to guard Plymouth Avenue, but we haven't got enough police, you know, to watch every business place on Plymouth. He says we are going to keep an eye on your place, but we cannot give you special protection."

Following this conversation with the police, Silver went home about 7 p. m. According to his deposition he informed the police of his intention to leave at that hour and told them that he had boarded up his doors and windows. During the night of July 20-21, plaintiffs' building and store were burned by rioters throwing "Molotov cocktails" against the building. They now seek recovery from the city for the damage to the building and store. Their complaint is based on allegations that the city of Minneapolis was negligent in failing to provide police and fire protection to their building after it had been requested by plaintiffs, or to take reasonable measures to prevent the riot.

The district court granted defendant's motion for summary judgment and dismissal of plaintiffs' complaint on the merits. The appeal raises essentially two questions: (1) Do plaintiffs have a cause of action against the city under Minn. St. 466.02

for negligence on the part of the city in protecting plaintiffs' property from riot damage? (2) Do plaintiffs have an action at common law against the city for riot damage where they advised the city of the danger to their property and requested police protection?

As we read plaintiffs' brief, it would seem that they concede that in the absence of Minn. St. c. 466, Minnesota municipalities are immune from tort liability for the activities of their police and fire departments acting within the scope of their duties. The issue, then, is whether a cause of action exists under § 466.02, or whether it is excluded by § 466.03. Chapter 466 abolishes sovereign immunity as to tort claims against municipalities, with certain listed exceptions. Section 466.02 reads:

"Subject to the limitations of Laws 1963, Chapter 798, [Minn. St. 466.01 to 466.15] every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."

Section 466.03, so far as here material, reads:

"Subdivision 1. Section 466.02 does not apply to any claim enumerated in this section. As to any such claim every muncipality shall be liable only in accordance with the applicable statute and where there is no such statute, every municipality shall be immune from liability.

\* \* \* \* \*

"Subd. 6. Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

It is the contention of the city that the proper deployment of its police and fire departments for the protection of all the people of the city requires the exercise of discretion and therefore comes within § 466.03, subd. 6.

Both parties adopt the definition of "discretion" found in

Romsdahl v. Town of Long Lake, 175 Minn. 34, 36, 220 N.W. 166, 167, where we said:

"* * * When the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial. Discretion is the power or right of acting officially according to what appears best and appropriate under the circumstances. It cannot be controlled."

It is quite apparent that § 466.03, subd. 6, is modeled largely on § 2680(a) of the Federal Tort Claims Act, 62 Stat. 982, 28 USCA, § 2680(a), which contains exceptions similar to subd. 6 of our statute. Section 2680(a) provides in part that it shall not apply to—

"[a]ny claim based upon * * * the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

In the case of Dalehite v. United States, 346 U. S. 15, 35, 73 S. Ct. 956, 968, 97 L. ed. 1427, 1440, the Supreme Court of the United States said:

"It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable."

It is not necessary to discuss in detail the many cases involving

the exception contained in the Federal act that excludes the right to recover. Reference to a few should suffice.

The case of United States v. Faneca (5 Cir.) 332 F. (2d) 872, involved the right to recover for the alleged tortious conduct of Federal officials in connection with the Government's efforts to enroll one Meredith, a Negro, as a student in the University of Mississippi. The defendants were the United States, the deputy attorney general of the United States, and the chief of the executive officers of the United States marshals. In holding there was no liability due to the exception from the Tort Claims Act, the court said (332 F. [2d] 874) :

"Just as the tasks of carrying out the orders of this Court and of handling an unruly mob are among the responsibilities of the Chief Marshal and the Deputy Attorney General, so is the choice of means for performing these tasks peculiarly within their discretion. The discretion to choose the *modus operandi* and to decide the time in which to put it into action was specifically delegated to McShane [chief of the executive officers of the United States marshals] and Katzenbach [deputy attorney general of the United States]."

The case of Smith v. United States (5 Cir.) 375 F. (2d) 243, involved the right to recover under the Federal Tort Claims Act for failure of the Government to protect plaintiff, who had served as a juror in a case involving civil rights, from picketing which destroyed his business. In denying liability, the court said (375 F. [2d] 245) :

"Each party recognizes, of course, that the major case interpreting the Act [the Federal Tort Claims Act] in this area is Dalehite v. U. S., 1953, 346 U.S. 15, 73 S. Ct. 956, 97 L. Ed. 1427. * * *

\* \* \* \* \*

"We therefore hold that § 2680(a) exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General, no matter

whether these decisions are made during the investigation or prosecution of offenses. * * * Another holding could diffuse the government's control over policies committed to it by the Constitution, and irrationally concentrate political responsibility in fortuitous lawsuits.

"Whatever else § 2680 (a) may do, its discretionary function exception prevents this diffusion of governmental power into private hands. The United States is immune from liability in the present case not because of the mere fact that government officials made choices, but because the choices made affected the political (not merely the monetary) interests of the nation."

We think it is enough to say that here, in the light of rumored impending riots, the city had the right to decide how most effectively to deploy its police and fire manpower so as to control such riots to the best of its ability if they did break out, and to furnish protection to as many citizens as its manpower would permit. Plaintiffs were not entitled to more protection than others. Choice of the use of police and fire manpower involves the use of discretion and falls squarely within the statutory exception from liability expressed in subd. 6 of § 466.03. To hold that those who have called the police, advising that there may be riots, can recover and those who have not called the police may not recover would establish an unconscionable rule. Either everyone who suffered damage by riot should recover or none should be permitted to do so. If it is to be the law that only those who call the police and ask for protection from impending riots are entitled to recover, it is almost certain that every property owner in areas where rioting is likely to occur in the future will call the police department and demand protection as a foundation for a future lawsuit to recover damages against the city if, perchance, their property is damaged or destroyed. To impose liability upon the city for all damage done by rioters would, we think, impose a burden it is incapable of carrying. In the case of Riss v. City of New York, 22 N. Y. (2d) 579, 581, 293 N.Y.S. (2d) 897,

898, 240 N. E. (2d) 860, the New York Court of Appeals in a situation involving a similar issue said:

"* * * The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits."

We are satisfied that under the facts of the present case the city was exercising discretion in determining how to best cope with impending trouble by deploying its police and fire manpower so as to protect the property of as many people as was possible within its limited resources. That being true, the case falls squarely within the exception provided by § 466.03, subd. 6, and the court correctly ruled that the complaint did not state a cause of action upon which relief could be granted.

Absent constitutional restrictions, the legislature may decide the extent to which the state and its subdivisions should be subject to liability for the torts of its officers and agents. At common law there was no liability for injury by acts of mobs or rioters. Chapter 466 is an extension of liability for torts, but the liability is limited by the statute and the exceptions contained within it. See, Peterson, *Governmental Responsibility for Torts In Minnesota,* 26 Minn. L. Rev. 700, 727.

We do not believe that the legislature in lifting the bar of sovereign immunity intended to permit recovery in a case such as this. Had it intended to do so it could easily have said so, as it has, for example, in the case of lynching. Section 373.28 provides that the county in which a lynching occurs shall be liable in damages to the dependents of the person lynched in a sum not exceeding $7,500, to be recovered in a civil action.

The case of Y. M. C. A. v. United States, 395 U. S. 85, 89 S. Ct. 1511, 23 L. ed. (2d) 117, did not involve an action brought under the Federal Tort Claims Act, but it did involve the right of plaintiffs to recover in the Court of Claims for damages sustained when the United States troops, during riots in Panama, entered plaintiffs' building. The rationale involved in the plaintiffs' claim is analogous to that involved here. Mr. Justice Harlan, in a concurring opinion, said (395 U. S. 95, 89 S. Ct. 1517, 23 L. ed. [2d] 126):

"Petitioners' claim that they may recover on a bare showing that they were afforded 'inadequate' protection has an additional defect which should be noted. If courts were required to consider whether the military or police protection afforded a particular property owner was 'adequate,' they would be required to make judgments which are best left to officials directly responsible to the electorate. * * *

* * * * *

"* * * [W]hile the rioters are surging through the streets out of control, everyone must recognize that the Government cannot protect all property all of the time. I think it appropriate to say, however, that our decision today does not in any way suggest that the victims of civil disturbances are undeserving of relief. But it is for the Congress, not this Court, to decide the extent to which those injured in the riot should be compensated, regardless of the extent to which the police or military attempted to protect the particular property which each individual owns."

Affirmed.