*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0459**

Peter Richard Rickmyer,
Appellant,

vs.

Xenos Letoi Brooks,
Defendant,

Marva Wagner in her individual capacity,
and in her official capacity with Metropolitan Council, et al.,
Respondents.

**Filed September 2, 2025
Affirmed in part, reversed in part, and remanded
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CV-24-5597

Peter Richard Rickmyer, Minneapolis, Minnesota (pro se appellant)

Jason M. Hiveley, Ashley M. Ramstad, Emma M. Baker, Iverson Reuvers, Bloomington, Minnesota (for respondents)

Considered and decided by Harris, Presiding Judge; Bjorkman, Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant Peter Richard Rickmyer challenges the dismissal, for failure to state a claim on which relief can be granted, of his negligence claims against respondents

Metropolitan Council and one of its bus drivers for personal injuries suffered during an altercation with another passenger. Because the claims related to the bus driver's conduct are barred by official and vicarious official immunity, we affirm in part. But because, on this record, Metropolitan Council has not met its burden to demonstrate statutory immunity applies, we reverse in part, and remand.

**FACTS**

In July 2022, Rickmyer was riding a Metro Transit bus when he was physically attacked by another passenger, defendant Xenos Letoi Brooks. Brooks struck and kicked Rickmyer several times and then deployed mace against him while he was lying injured on the floor of the bus.

As the assault occurred, the bus driver, respondent Marva Wagner, pulled off the road and parked the bus, activated the bus's silent alarm, repeatedly called out to dispatch requesting that law enforcement "come now," and opened the bus doors to allow other passengers to exit. At several points during the altercation, Brooks stepped off the bus, away from Rickmyer. Wagner initially had to step off the bus due to mace exposure but later tried to prevent Brooks from assaulting Rickmyer by using the "operator barrier," a piece of plastic designed to separate the bus driver from passengers, and by physically "get[ting] in between" the two men. Approximately five minutes after the silent alarm was triggered, Metro Transit Police arrived at the scene and arrested Brooks.

Rickmyer initiated this action against Brooks and Metropolitan Council, the government entity in charge of Metro Transit and the Metro Transit Police. *See* Minn. Stat. §§ 473.371-.452 (2024). He later amended his complaint to add Wagner as a defendant.

2

The amended complaint alleges that Wagner's actions during the assault—specifically her failure to close the bus doors—were grossly negligent and breached her ministerial duties. And it alleges that Metropolitan Council was negligent for failing to (1) timely respond to the silent alarm, and (2) request the assistance of local police.

Wagner and Metropolitan Council jointly moved to dismiss Rickmyer's amended complaint for failing to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). The district court granted the motion, reasoning that (1) Rickmyer's claims relating to Wagner's conduct are barred by official immunity and vicarious official immunity; and (2) Rickmyer's claims related to Metropolitan Council's own actions are barred by statutory immunity.

Rickmyer appeals.

**DECISION**

A complaint is subject to dismissal if it fails "to state a claim upon which relief can be granted." Minn. R. Civ. P. 12.02(e). A claim is sufficient to withstand a rule 12.02(e) motion to dismiss if "it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). We review whether a complaint sets forth a legally sufficient claim de novo, accepting the facts alleged in the complaint as true and construing all reasonable inferences in favor of the nonmoving party. *Sterry v. Minn. Dep't of Corr.*, 8 N.W.3d 224, 235 (Minn. 2024).

Rickmyer raises seven issues, which are best understood to challenge the district court's conclusions that (1) his claims related to Wagner's conduct are barred by official

3

and vicarious official immunity, and (2) his claims related to Metropolitan Council's actions are barred by statutory immunity.[1]  We address each argument in turn.

## I.     Rickmyer's claims related to Wagner's conduct are barred by official immunity and vicarious official immunity.

Common-law official immunity protects public officials "charged by law with duties which call for the exercise of [their] judgment or discretion" from personal liability unless the public official is "guilty of a willful or malicious wrong."  *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004) (quotation omitted).  The doctrine is designed to permit government actors to "perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment."  *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014).  Official immunity constitutes immunity from suit, not just from liability.  *Id.*  If official immunity protects a public official, vicarious official immunity generally protects the government employer.  *Schroeder v. St. Louis County*, 708 N.W.2d 497, 508 (Minn. 2006).  We review the application of official immunity and vicarious official immunity de novo.  *Mumm v. Mornson*, 708 N.W.2d 475, 481 (Minn. 2006).

Whether official immunity applies depends on "(1) the conduct at issue; (2) whether the conduct is discretionary or ministerial; and (3) if discretionary, whether the conduct

---

[1] The amended complaint purports to assert claims against Wagner in both her individual and official capacities.  In granting respondents' motion to dismiss, the district court dismissed the individual-capacity claims because Rickmyer expressly alleged that Wagner acted only within the scope of her employment.  Rickmyer does not challenge, and we therefore do not address, the district court's dismissal of Rickmyer's claims against Wagner in her individual capacity.

4

was willful or malicious." *Kariniemi v. City of Rockford*, 882 N.W.2d 593, 600 (Minn. 2016) (quotation omitted). When analyzing whether an act is ministerial or discretionary, "the focus is on the nature of the act." *Mumm*, 708 N.W.2d at 490 (quotation omitted). A ministerial act is a "simple, definite duty arising under and because of stated conditions." *Id.* (quotation omitted). In contrast, a discretionary act involves "individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Id.* at 490-91 (quotation omitted).

At issue here are Wagner's acts in response to Rickmyer's assault, including stopping the bus on the side of the road, activating the silent alarm and calling for emergency aid, opening the bus doors, engaging the operator barrier, and physically positioning herself between Rickmyer and Brooks. The district court concluded this conduct was discretionary because Wagner was exercising "professional judgment" in response to an "evolving" situation. Rickmyer contends that this conclusion is erroneous, specifically challenging the district court's reliance on *Watson ex rel. Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406 (Minn. 1996). We begin our analysis by considering that case.

As here, Watson's claims flowed from a physical assault he sustained at the hands of other passengers while riding a Metro Transit bus. *Watson*, 553 N.W.2d at 409. Watson sued the Metro Transit Commission (MTC)[2] alleging, in part, that its bus driver was negligent for failing to use the bus's intercom system to attempt to disrupt the assault and

---

[2] Metropolitan Council is the successor entity to the Metro Transit Commission. *Watson*, 553 N.W.2d at 412 n.2.

for failing to pull over to the side of the road and stop the bus. *Id.* at 414. The MTC moved for summary judgment, arguing that the bus driver's actions were discretionary in nature and therefore protected by official immunity. The district court denied the motion, and this court affirmed. *Id.* at 411. Our supreme court reversed, concluding that the bus driver's conduct was subject to official immunity because the "volatile situation" caused by the assault "called for the exercise of judgment and discretion" by the bus driver. *Id.* at 415.

Rickmyer urges us to reach a contrary conclusion in this case for two reasons. First, he contends that *Watson* is distinguishable because it "did not involve a [bus] driver allowing an assailant back onto a bus to continue an attack." But prior caselaw need not present factually identical circumstances to inform our analysis. And the facts in *Watson* are markedly similar to the facts here; both cases involve a physical assault on a bus perpetrated by another passenger requiring the bus driver to immediately respond in a way that maximizes safety. Accordingly, we agree with the district court that *Watson* guides our official-immunity analysis.

Second, Rickmyer argues that Wagner's actions, specifically those related to her "duty to secure the bus doors," were ministerial, not discretionary. The only portion of the amended complaint relevant to this argument states: "Defendant Wagner's failure to follow standard procedures (closing the doors promptly) breached her ministerial duties." But Rickmyer's assertion of breach is not a factual allegation; it is a legal conclusion. We are not bound to accept a complaint's legal conclusions as true when determining whether the complaint survives a motion to dismiss. *Walsh*, 851 N.W.2d at 603.

Rickmyer's factual allegation that Wagner "fail[ed] to follow standard procedures" in operating the bus doors also fails to state an actionable claim. The existence of a "standard procedure" governing when a bus driver should close the bus doors does not render Wagner's decision to close or open the doors when faced with an ongoing emergency ministerial. Indeed, as the *Watson* court explained, the decisions a bus driver makes "in a situation where passengers [are] being assaulted [are] clearly not absolute, certain and imperative" and cannot be construed as the "mere[] execution of a specific duty arising from fixed and designated facts." 553 N.W.2d at 415 (quotations omitted). Rather, the urgent and developing nature of the ongoing assault requires a bus driver to exercise professional judgment and discretion to best protect all passengers. *Id.*; *see also Vassallo*, 842 N.W.2d at 462 ("Official immunity typically protects the conduct of public officials responding to emergencies on the grounds that emergency conditions offer little time for reflection and often involve incomplete and confusing information." (quotations omitted)).

In short, accepting Rickmyer's factual allegations as true, we conclude that the conduct at issue was discretionary in nature. Because Rickmyer does not allege that Wagner acted in a willful or malicious manner, Wagner is protected by official immunity. And because that is so, vicarious official immunity protects Metropolitan Council from suit and liability related to Wagner's conduct. *Schroeder*, 708 N.W.2d at 508.

## II. Rickmyer's claims related to Metropolitan Council's conduct are not barred by statutory immunity.

A government entity is generally liable for its torts, subject to certain exceptions. Minn. Stat. § 466.02 (2024). One such exception exists for claims "based upon the

performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subd. 6 (2024). This statutory immunity for discretionary functions is designed to "prevent the courts from conducting an after-the-fact review which second-guesses certain policy-making activities that are legislative or executive in nature." *Watson*, 553 N.W.2d at 412 (quotation omitted); *see Doe 601 by Doe 601 v. Best Acad.*, 17 N.W.3d 464, 476 (Minn. 2025) (stating the discretionary-function exception to liability serves the purpose of "protecting legislative and executive branch prerogatives in making public policy"). "The party claiming statutory immunity has the burden of proof." *S.W. v. Spring Lake Park Sch. Dist. 16*, 580 N.W.2d 19, 22 (Minn. 1998).

In determining what constitutes a discretionary function, Minnesota courts distinguish between "planning level" and "operational level" conduct. *Watson*, 553 N.W.2d at 412. Planning-level conduct—which involves the evaluation of social, political, and economic considerations—is protected by statutory immunity. *Schroeder*, 708 N.W.2d at 504. Such conduct requires the weighing of "safety issues, financial burdens, and possible legal consequences." *Watson*, 553 N.W.2d at 412. Operational-level conduct—which includes the "day-to-day operations of government, the application of scientific and technical skills, [and] the exercise of professional judgment"—is not subject to statutory immunity. *Schroeder*, 708 N.W.2d at 504.

A government entity seeking to invoke statutory immunity must demonstrate that its challenged conduct is "the type of legislative or executive branch policymaking" to which statutory immunity applies. *Doe 601*, 17 N.W.3d at 478. To do so, the government

8

entity generally "must produce evidence of how it made the decision for which it claims immunity. Broad, conclusory assertions that it based its decision on economic, social, political, and financial factors are insufficient." *Id.* at 479 (quotation and citation omitted). We review the application of statutory immunity de novo. *Id.* at 474.

In analyzing whether statutory immunity applies, we first identify the governmental conduct at issue and then ascertain whether it is operational or planning in nature. *Christopherson v. City of Albert Lea*, 623 N.W.2d 272, 275 (Minn. App. 2001). The first step of the analysis—the governmental conduct at issue—is not in dispute here. Rickmyer's amended complaint alleges that Metropolitan Council was negligent because it failed to (1) timely respond to the bus's silent alarm and (2) request the assistance of local police. But the parties disagree whether Metropolitan Council established that this conduct is planning or operational in nature.

*Watson* guides this second step of our analysis. Watson argued that the MTC was negligent because it did not have security personnel ride the bus and did not adequately train its bus driver. *Watson*, 553 N.W.2d at 411. The MTC moved for summary judgment, asserting that its actions were protected by statutory immunity. *Id.* at 409-10. In support of its motion, the MTC submitted deposition testimony of its acting police chief that described how decisions regarding placement of security personnel on buses and training bus drivers to deal with abusive passengers are made. *Id.* at 412. The acting chief explained that the department "weighs certain factors" to determine where to place officers and how it trains drivers to "deal with difficult people." *Id.* Our supreme court concluded that the MTC's policies regarding the use of security personnel and bus-driver training

9

constitute planning-level conduct subject to statutory immunity because they require "balancing of financial, economic and social considerations." *Id.* at 413.

Metropolitan Council contends that Rickmyer's claims against it are "almost identical" to those raised in *Watson* and that the district court properly reviewed the conduct at issue as planning-level conduct subject to statutory immunity. Rickmyer argues that the district court "misapplied" statutory immunity. We agree with Rickmyer.

*Watson* was a summary-judgment case—not a case seeking dismissal under rule 12.02(e). *Id.* at 411. Accordingly, the court was permitted to and did consider testimony regarding the MTC's challenged decision-making. *Id.* at 412. In contrast, a rule 12.02(e) analysis is confined to the four corners of the complaint. *See Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003) (stating that, when reviewing a rule 12.02(e) claim, appellate courts consider "only the facts alleged in the complaint").

The record before us on appeal from the rule 12.02(e) dismissal contains no evidence from which we can conclude that the conduct at issue involves the evaluation of economic, social, or political considerations upon which statutory immunity is based. Metropolitan Council argues only that its "response to crimes that occur on Metro Transit buses reflects a balancing of financial, social, and economic issues concerning passenger safety and the management of limited resources"—exactly the type of "[b]road, conclusory assertion[]" that is inadequate under Minnesota caselaw. *Doe 601*, 17 N.W.3d at 479. On this record, we conclude that Metropolitan Council has not met its burden of establishing that the conduct at issue is planning-level conduct that is subject to statutory immunity.

We, therefore, reverse the district court's dismissal of Rickmyer's claims related to Metropolitan Council's actions.

In sum, Rickmyer's claims related to Wagner's conduct are barred by official and vicarious official immunity. But the claims related to Metropolitan Council's conduct are not—on this record—protected by statutory immunity. Accordingly, we affirm in part, reverse in part, and remand.

**Affirmed in part, reversed in part, and remanded.**