# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3504

_____

Shukri Hassan, as the trustee of             *
the Estate of Abu Kassim Jeilani,            *
Decedent,                                    *
                                             *
             Appellant,                      *
                                             *   Appeal from the United States
        v.                                   *   District Court for the
                                             *   District of Minnesota.
City of Minneapolis, Minnesota;              *
James R. Jensen, Officer,                    *
Badge No. 3282; Michael McCarthy,            *
Officer, Badge No. 4520; Hein Dinh,          *
Officer, Badge No. 1551; Justin              *
Merten, Officer, Badge No. 4752;             *
Vicki Karmiki, Officer; Joel Kimmerle,       *
Corporal, all personally, individually       *
and in their capacities as Minneapolis       *
Police Officers; Richard Roe and Jane        *
Doe, Unknown and Unnamed                     *
Minneapolis Police Officers,                 *
personally, individually, and in their       *
capacities as Minneapolis Police             *
Officers; William McManus, Chief,            *
as successor to Chief Robert Olson,          *
Chief of Police, personally,                 *
individually, and in his official            *
capacity; Robert K. Olson, Chief of          *
Police, personally, individually,            *
and in his official capacity,                *
                                             *
             Appellees.                      *

_____

Submitted: April 2, 2007
Filed: May 31, 2007
_____

Before LOKEN, Chief Judge, BEAM, and RILEY, Circuit Judges.
_____

RILEY, Circuit Judge.

After Minneapolis police officers shot and killed Abu Kassim Jeilani (Jeilani), Shukri Hassan (Hassan), the trustee of Jeilani's estate, filed a civil rights action under 42 U.S.C. § 1983,[1] as well as state law tort claims based on negligence, including a wrongful death claim, against the City of Minneapolis (City) and the involved police officers (individual defendants). All defendants filed a motion for summary judgment, claiming qualified, official, and statutory immunity, as well as claiming Hassan failed to show any violation of a constitutional right. The district court,[2] as a matter of law, found no constitutional violation and granted defendants' motion. Hassan appeals the summary judgment in favor of the individual defendants.[3] We affirm.

I.      BACKGROUND

On March 10, 2002, at approximately 2:00 p.m., Minneapolis Police Officer Joel Kimmerle (Officer Kimmerle) responded to a call from Sergeant Todd Gross (Sergeant Gross) for assistance. Upon arriving, Officer Kimmerle observed a black

---

[1]In the district court, Hassan also brought a claim under 42 U.S.C. § 1985. On appeal, Hassan does not argue a § 1985 claim.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[3]On appeal, Hassan does not expressly challenge the summary judgment for the City.

man, later identified as Jeilani, a Somalian, walking down the middle of the street carrying a machete and a tire iron. Sergeant Gross and Officer Kimmerle followed Jeilani in their squad cars. Officer Kimmerle, using the squad car's public address system, commanded Jeilani to drop his weapons, but Jeilani ignored the officer's commands and continued walking.

Officers Hien Dinh (Officer Dinh), Justin Merten (Officer Merten), Michael McCarthy (Officer McCarthy), Linda Chaplin (Officer Chaplin), and James Jensen (Officer Jensen) also responded to Sergeant Gross's call and arrived at the scene. Officer Jensen was a member of the Crisis Intervention Team (CIT) and, as part of that training, knew how to deploy a taser (electroshock weapon which generally incapacitates the person).

Officer Jensen pulled his squad car up alongside Jeilani and asked Jeilani "how can we help you out today." Jeilani turned around, waived the machete in Officer Jensen's direction and said something in a language other than English. Officer Jensen noticed there were pedestrians in the direction Jeilani was headed. As a result, Officer Jensen deployed his taser through the squad-car window and hit Jeilani. Jeilani fell to the ground, dropping his weapons. Jeilani then got up, picked up his weapons, and said "that ain't enough." Jeilani continued walking, and Officer Jensen hit Jeilani with his taser a second time, but Jeilani pulled free.

Jeilani then ran into the parking lot of a strip mall with the machete raised toward Officer McCarthy. Officer McCarthy drew his weapon and, while backpedaling, repeatedly told Jeilani to stop. Jeilani came within ten feet of Officer McCarthy and stopped. Suddenly, Jeilani focused his attention on Officer Chaplin (Officer McCarthy's partner) and ran toward her. Officer Chaplin retreated to her squad car. Jeilani paced and swung the machete at shoulder height. Officer Jensen hit Jeilani a third time with his taser. This time, Officer Jensen observed both prongs of the taser hit Jeilani, but Jeilani exhibited no reaction.

-3-

By this time, Officer Vicki Karnik (Officer Karnik), also a trained member of the CIT, arrived at the scene. Sergeant Gross ordered Officer Karnik to deploy her taser, which she did, hitting Jeilani twice. Jeilani did not react to the first hit. Officer Kimmerle testified he heard Jeilani state "it ain't working." Jeilani ran toward Officer Karnik, who retreated while reloading taser cartridges. Officer Karnik hit Jeilani again with the taser. This time, Officer Karnik heard the electricity working in Jeilani's body. However, Jeilani again broke free from the taser. Officer Jensen then asked Jeilani, "what do we got to do to get you to put your weapons down." Jeilani responded by hitting a light pole with his machete. Officer Karnik commanded Jeilani to drop his weapons, but Jeilani ignored her and shifted his focus to Officer Dinh's squad car.

As Jeilani approached Officer Dinh, the officer took cover behind the passenger door, drew out his weapon, and ordered Jeilani to put his weapons down. Jeilani moved toward Officer Dinh, who then took cover inside the squad car. Jeilani struck the hood of Officer Dinh's squad car with the machete. Officer Dinh told Jeilani to back up or he would shoot him, and Jeilani backed up. At that time, Officer Dinh exited the car and joined Officer Jensen, who was close to the trunk of Officer Dinh's squad car. Jeilani moved toward the officers making slashing motions with his machete and hit the trunk of the squad car with his machete. Now, there was nothing between Jeilani and Officers Jensen, Dinh, and Kimmerle. The officers pointed their guns at Jeilani and again ordered him to put down his weapons. Jeilani, however, refused and the officers fired their guns, killing Jeilani.

Officers Jensen, Dinh, and Kimmerle each testified they thought their lives were in danger when Jeilani moved toward them. Officers McCarthy, Karnik, and Merten, who were covering the other officers and also fired their weapons, testified they feared for the lives of their fellow officers. The entire altercation lasted approximately eleven minutes.

Hassan, as the administrator of Jeilani's estate, filed a lawsuit alleging claims under §1983, as well as state law negligence claims for negligent training, supervising, hiring and retention, and for wrongful death. The City and the individual defendants filed a motion for summary judgment, claiming qualified immunity on the §1983 claim, and official and statutory immunity on the state law negligence claims. The district court granted the individual defendants' motion. This appeal followed.

## II. DISCUSSION

We review de novo a grant of summary judgment. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir. 2005). Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Pope, 406 F.3d at 1006.

### A. Section 1983 Claim

Section 1983 prohibits government officials from depriving other persons of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. However, government officials are entitled to dismissal "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sanders v. City of Minneapolis, Minn., 474 F.3d 523, 526 (8th Cir. 2007) (internal quotation marks omitted). "Qualified immunity is not just a defense to liability, it constitutes immunity from suit." Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005). "In addressing an officer's claimed entitlement to qualified immunity, the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." Sanders, 474 F.3d at 526 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Because Hassan's case presents an issue of whether the officers used excessive force, we must analyze the case under the Fourth Amendment's objective reasonableness standard. See Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005)

(internal quotation marks omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Id. (citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)). "Hence, '[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'" Id. (quoting Garner, 471 U.S. at 11). However, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Brosseau v. Haugen, 543 U.S. 194, 197-98 (2004).

Here, the facts viewed in the light most favorable to Hassan, show the use of deadly force was not constitutionally unreasonable. Jeilani posed a significant and immediate threat of death or serious physical injury to the officers and to the public. Jeilani aggressively brandished a machete and a tire iron while approaching officers in a threatening manner and did not slow down, although the officers repeatedly asked Jeilani to put down his weapons and deployed tasers against him a total of five times. The encounters occurred on a public street and in a shopping mall parking lot. Citizens were in the vicinity and Jeilani moved toward the citizens more than once. Under the circumstances of this case, deadly force was reasonably necessary. The officers' actions were objectively reasonable and did not violate Jeilani's Fourth Amendment right to be free from unreasonable seizures.

Hassan argues the officers should have known Jeilani's behavior indicated he was mentally ill, and thus, their conduct was unreasonable. However, even if Jeilani were mentally ill, Jeilani's mental state does not change the fact he posed a deadly threat to the officers and the public. "Knowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public when faced with threatening conduct by the disabled individual."

<u>Sanders</u>, 474 F.3d at 527 (citing <u>Bates ex rel. Johns v. Chesterfield County, Va.</u>, 216 F.3d 367, 372 (4th Cir. 2000)).

Hassan also claims the City's failure to (1) train its officers properly how to approach individuals with mental illnesses, and (2) provide someone who could speak Somalian, contributed to the escalation of the situation to the point of needing to use deadly force. However, Jeilani's death is not the result of the City's failure to train its officers or provide a Somalian translator (the record indicates Jeilani spoke some English). Jeilani is dead because of his own aggressive behavior in threatening, and then attempting to attack, police officers by using a machete and a tire iron. Here, the officers had every reason to believe Jeilani could have killed or seriously injured any one of them or a citizen nearby, and thus, it was not constitutionally unreasonable to use deadly force. "Without a constitutional violation by the individual officers, there can be no § 1983 or <u>Monell</u>[4] failure to train municipal liability." <u>Sanders</u>, 474 F.3d at 527 (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (per curiam)).

No constitutional violation occurred, and the individual defendants are entitled to be dismissed. <u>See</u> <u>Ambrose v. Young</u>, 474 F.3d 1070, 1077 & n.3 (8th Cir. 2007) Summary judgment in favor of the individual defendants was properly granted with respect to Hassan's § 1983 claim.

### B. State Law Claims

In Minnesota "[t]he official immunity doctrine provides that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." <u>Elwood v. County of Rice</u>, 423 N.W.2d 671, 677 (Minn. 1988) (internal quotation marks omitted). Also under Minnesota law, the decision to use deadly force is a discretionary decision entitling a police officer to official immunity absent a willful or malicious wrong. <u>Maras v. City of Brainerd</u>, 502 N.W.2d 69, 77

---

[4]<u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).

(Minn. Ct. App. 1993). Official immunity also generally protects governmental entities from vicarious liability for actions that are entitled to immunity. Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998). "In determining whether an official has committed a malicious wrong, we consider whether the official has intentionally committed an act that he or she had reason to believe is prohibited." State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571-72 (Minn. 1994). This "contemplates less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions." Id. at 571.

Because the facts establish the officers' use of deadly force was reasonable, a reasonable fact finder could not conclude the officers' conduct was willful or malicious. Here, the facts reflect the officers had every reason to believe they and the public were in danger, and that using deadly force against Jeilani to protect themselves and bystanders was reasonable. Thus, the officers are entitled to a dismissal of Hassan's wrongful death claim. Furthermore, because hiring, supervising, and training police officers are policy-level activities, the City, by statute, has discretionary immunity from any tort liability based on negligence. Minn. Stat. § 466.03, subd. 6; Fear v. Indep. Sch. Dist., 911, 634 N.W.2d 204, 212 (Minn. Ct. App. 2001) (holding that decisions of hiring, supervising, training, and retaining are considered policy-level activities protected by statutory immunity); Watson by Hanson v. Metropolitan Transit Com'n., 553 N.W.2d 406, 413 (Minn. 1996) (concluding the training of city bus drivers is a policy-level decision protected by statutory immunity); Maras, 502 N.W.2d at 78 (stating "the training a city provides to its police officers is a policy decision" protected by discretionary immunity). Summary judgment was properly granted in favor of the City and its officers.[5]

---

[5]On appeal, Hassan also alleges the individual defendants are not entitled to official immunity because they discriminated against Jeilani by not providing a Somalian interpreter and mental health resources during the encounter. Hassan also argues official immunity does not apply because the officers were disorganized and

## III. CONCLUSION

We affirm the judgment of the district court.

_____

their tasers did not function properly.  However, as previously stated, nothing in the record suggests the officers engaged in any willful or malicious acts.  Rather, the undisputed evidence in this case shows the officers were only trying to protect themselves and others from a dangerous man brandishing a machete and tire iron on a public street and then in the parking lot of a strip mall.  Furthermore, Hassan does not indicate how the individual defendants' handling of the situation or their conduct was so different from expected conduct that discrimination was the probable explanation.  Beaulieu, 518 N.W.2d at 572 (holding official immunity is available in claims of discrimination if plaintiff fails to establish his treatment by defendants "was so at variance with what would reasonably be anticipated, absent racial discrimination that racial discrimination is the probable explanation") (internal quotation marks and alterations omitted).  Hassan's unsupported allegations of discrimination cannot survive summary judgment.