# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2481

_____

| | | |
|---|---|---|
| Shawanna Nelson, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Correctional Medical Services; | * | Eastern District of Arkansas. |
| Max Mobley, Doctor, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Larry Norris, Director of the ADC; | * | |
| Patricia Turnesky, Officer, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: March 14, 2008
Filed: July 18, 2008

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge

Larry Norris , Director of the Arkansas Department of Correction (Director Norris), and Patricia Turnesky, prison security officer (Officer Turnesky), appeal from the district court's denial of their motion for summary judgment based on qualified immunity. For the reasons stated below, we reverse.

## I.   BACKGROUND

Shawanna Nelson (Nelson) was incarcerated in the Arkansas Department of Correction for credit card fraud and hot checks. Nelson was six months pregnant when she entered prison on June 3, 2003. On September 20, 2003, Nelson went to the prison's infirmary because of contractions. The nurses in the infirmary determined Nelson's contractions were strong and Nelson should be transported to the hospital. Prison officers placed Nelson in handcuffs and leg restraints before Officer Turnesky escorted Nelson to the hospital.

Upon arrival at the hospital, Nelson was immediately admitted to the labor and delivery unit where Officer Turnesky shackled Nelson to the bed's handrail. Nelson remained handcuffed and shackled until the medical staff needed to access Nelson's arms for drawing blood and to determine how far Nelson had dilated, at which time the handcuffs and shackles were removed. For the majority of the labor time, however, Nelson remained shackled by, at least, one ankle to the bed handrail. When the doctor arrived for the delivery and requested removal of the restraints, Officer Turnesky removed the restraints. After giving birth to her son, Nelson was again placed in leg restraints. Officer Turnesky testified she did not ever feel threatened by Nelson at any time.

Claiming she experienced extreme mental anguish, pain and suffering, permanent back injury and hernia-like symptoms, Nelson brought a civil rights action, under 42 U.S.C. § 1983, against the officials and medical personnel, alleging violations of the Eighth Amendment. Nelson, among other contentions, claimed (1) Officer Turnesky's failure to remove the restraints earlier amounted to cruel and unusual punishment, and (2) Director Norris failed to ensure proper policies and customs were implemented with respect to the restraint of females in labor.

Director Norris and Officer Turnesky filed a motion for summary judgment, claiming qualified immunity and arguing no federal constitutional violation supports Nelson's § 1983 claim. Adopting the magistrate judge's report and recommendation, the district court denied summary judgment on the basis of qualified immunity. The district court stated it could not say reasonable officials in the position of Director Norris and Officer Turnesky would not have known that shackling Nelson's legs, without regard to whether Nelson posed a flight risk, violated Nelson's Eighth Amendment rights.[1] Director Norris and Officer Turnesky appeal.

## II.    DISCUSSION

We review de novo a denial of summary judgment based on qualified immunity. See Brown v. Fortner, 518 F.3d 552, 558 (8th Cir. 2008) (citation omitted). Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Brown, 518 F.3d at 558 (citation omitted).

Section 1983 provides a cause of action against government officials who deprive persons of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Government officials are entitled to a dismissal "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sanders v. City of Minneapolis, Minn., 474 F.3d 523, 526 (8th Cir. 2007) (citations and internal quotation marks omitted). "In addressing an officer's claimed entitlement to qualified immunity, the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

---

[1]Nelson also brought other claims against these and other defendants. The district court dismissed all of Nelson's claims except the Eighth Amendment claims arising out of Nelson being restrained to the hospital bed handrail during labor.

"Qualified immunity is not just a defense to liability, it constitutes immunity from suit." Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005) (citing Saucier, 533 U.S. at 200). If the allegations and undisputed facts do not amount to a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

In reviewing the district court's denial of qualified immunity, we must determine first if undisputed facts show a "deprivation of an actual constitutional right." Conn v. Gabbert, 526 U.S. 286, 290 (1999). It is well settled the "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id. at 106. "Our court has interpreted this standard as including both an objective and a subjective component: The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citation and internal quotation marks omitted).

With respect to the objective serious medical need, a medical need is "serious" if it "has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir 1997) (citation and internal quotation marks omitted). With respect to deliberately disregarding a medical need, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a

-4-

constitutional violation." Jolly, 205 F.3d at 1096 (citation and internal quotation marks omitted). More to the point, "defendants will therefore be liable for [a plaintiff's] injuries only if [a] policy of shackling [] detainees while they receive medical attention constitutes either deliberate indifference to medical needs or a punishment." Haslar v. Megerman, 104 F.3d 178, 180 (8th Cir. 1997) (citations omitted).

Nelson suffered from a serious medical need. Nelson was pregnant, went into labor and needed medical care. Nothing in the record indicates defendants deliberately disregarded Nelson's medical need. Recognizing the serious medical need, Nelson was taken to a hospital when the nurses in the prison's infirmary determined it was necessary. Upon arrival at the hospital, Nelson was immediately admitted to the labor and delivery unit. Although the record indicates Nelson was (1) initially handcuffed and shackled, (2) later shackled by, at least, one ankle to the bed railing until shortly before she actually gave birth, and (3) placed in leg restraints after giving birth, nothing in the record indicates Director Norris and Officer Turnesky, or anyone else, deliberately disregarded Nelson's medical needs. Transporting and "[a]dmitting [Nelson] to a hospital concretely demonstrates a deliberate concern for [Nelson's] medical well-being, and not an indifference." Id. The record shows Nelson received adequate medical treatment, and when medical personnel requested the removal of the restraints, Officer Turnesky complied.

Nelson insists (1) Officer Turnesky's failure to remove the ankle restraint amounts to cruel and unusual punishment; and (2) Director Norris failed to issue or implement a proper policy with respect to the use of restraints on female inmates in labor. "When a policy lacks an express intent to punish, as this one does, we may infer such an intent if the policy is either unrelated to a legitimate penological goal or excessive in relation to that goal." Id. (citation omitted). We have precedent discussing the policy of shackling inmates to a bed while receiving medical treatment. As explained in Haslar,

> [the shackling policy] serves the legitimate penological goal of preventing inmates . . . from escaping [] less secure confines, and is not excessive given that goal. A single armed guard often cannot prevent a determined, unrestrained, and sometimes aggressive inmate from escaping without resort to force. *It is eminently reasonable to prevent escape attempts at the outset by restraining hospitalized inmates to their beds . . . .*

Id. (emphasis added).

In Haslar, the shackled detainee was virtually comatose for the first few days of his hospitalization. During Haslar's hospitalization, his legs became extremely swollen to the point the shackles were barely visible. Id. at 179. Haslar complained the shackles were too tight and his feet hurt. Id. Officers still kept Haslar shackled during his entire stay in the hospital. Id. By the time Haslar left the hospital, Haslar could not walk, and he suffered permanent leg damage. Id.

As in Haslar, the policy of placing a restraint on Nelson while in a hospital bed is unequivocally related to a penological goal and is not constitutionally excessive in relation to that goal. All restraints were removed from Nelson when the attending physician requested their removal. Nelson's experience does not rise to the level of unnecessary and wanton infliction of pain implicating the Eighth Amendment.[2] See Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996). Contrary to the district court's determination, Nelson's allegations and undisputed facts do not amount to a constitutional violation. Therefore, we do not need to inquire further regarding qualified immunity. See Saucier, 533 U.S. at 201.

---

[2]As the district court noted, Nelson proffered no medical or other expert evidence suggesting any delay in care adversely affected her or her son. Other than unsubstantiated allegations, the record contains no medical evidence indicating the shackles caused any injuries to Nelson or her son.

## III.	CONCLUSION

Based on the foregoing, we reverse the judgment of the district court and remand with instructions to enter judgment consistent with this opinion.

_____