# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1157

_____

Bettie Smith, as Trustee for the Next-of-Kin of Quincy Deshawn Smith

*Plaintiff - Appellant*

v.

City of Minneapolis; Officer Shawn Brandt, (in his individual and official capacity); Officer Chris Humphrey, (in his individual and official capacity); Officer Timothy Devick, (in his individual and official capacity); Officer Carlos Baires Escobar, (in his individual and official capacity); Officer Nicholas McCarthy, (in his individual and official capacity)

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 20, 2013
Filed: June 6, 2014

_____

Before RILEY, Chief Judge, MELLOY and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Bettie Smith (Ms. Smith), as trustee for the next of kin of her deceased son Quincy Smith (Smith), sued five police officers (officers) and the City of Minneapolis

(city), alleging violations of (1) Smith's Fourth Amendment right to be secure against unreasonable seizure, pursuant to 42 U.S.C. § 1983, and (2) the Minnesota wrongful death statute, Minn. Stat. § 573.02. While the officers attempted to arrest Smith, he stopped breathing and was pronounced dead upon arrival at the hospital. The district court[1] granted defendants' motion for summary judgment on all counts. Ms. Smith appeals.[2] We affirm.

I.   BACKGROUND
     A.   Facts
In the early morning hours of December 9, 2008, city officers responded to a dispatch of a domestic situation involving a weapon, reportedly a rifle, regarding a woman and her ex-boyfriend, later identified as Smith. A 911 caller reported the ex-boyfriend had just been released from jail on a domestic abuse charge involving the same woman and was "getting ready to fight." Later in the call, the 911 caller stated, "He's standing there, and I don't know if he's getting ready to fight her or not."

Officer Timothy Devick responded and encountered Smith running outdoors near the 911 caller's home. Officer Devick did not see Smith with a rifle. Officer Devick drew his gun, pointed it at Smith, and ordered Smith to the ground. Smith stopped and turned toward Officer Devick. Smith's hands were in front of his face and his palms were facing out. But Smith did not drop to the ground. Smith was about 5 feet 2 inches tall and weighed approximately 315 pounds. Officer Devick approached Smith and used force in an attempt to get Smith to the ground: Officer Devick kicked Smith in the thigh and punched him in the head. Smith resisted and turned to run. Officer Devick grabbed Smith's jacket, but Smith still escaped, tumbling over a wood fence.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2]We have appellate jurisdiction under 28 U.S.C. § 1291.

Officer Devick pursued Smith. Four other officers, Shawn Brandt, Chris Humphrey, Carlos Escobar, and Nicholas McCarthy, together with Officer Devick eventually caught Smith after Smith had run across an intersection, down a street, between two buildings, farther down the street, and finally up against a chain link fence. Smith continued to resist arrest. During the attempted arrest, Smith repeatedly grabbed the fence in an effort to pull himself up, and the officers used a taser on Smith multiple times, punched him in the head, kneed him in the rib area, struck him in the back with the butt of a shotgun, and lay on top of Smith in their efforts to subdue him. The officers eventually succeeded in using three sets of handcuffs to connect Smith's arms behind his back and rolled Smith over on his side. At this point, Officer Devick noticed Smith was not breathing. Officer Devick rolled Smith onto his back and started chest compressions, and an officer called for an ambulance. Smith died in the ambulance on the way to the hospital. During the encounter, none of the officers saw any kind of weapon on Smith, and no weapon was found on his body.

The "case title" of Smith's autopsy report reads, "Cardiorespiratory Arrest Complicating Physical Exertion and Law Enforcement Subdual and Restraint." The medical examiner who performed Smith's autopsy stated Smith "had a cardio respiratory arrest or a very sudden basically arrest death, which was associated with his own exertion coupled with law enforcement subduing him and restraining him." "Final Diagnoses" included the following: "[b]lunt force injuries"; "[f]eatures of recent Conducted Energy Device (CED) use"; "[h]ypertensive cardiovascular disease"; and "[o]besity." The medical examiner considered Smith's death a "homicide," meaning "death in which others significantly participated in his demise."

B. **Procedural History**

Ms. Smith, as trustee for Smith's next of kin, sued (1) the officers in their individual capacities, alleging an unreasonable seizure in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983; (2) the officers in their individual and

official capacities for wrongful death under Minn. Stat. § 573.02; and (3) the city for vicarious liability on the wrongful death count, § 573.02.[3]

The officers and the city moved for summary judgment, arguing the officers' use of force was objectively reasonable, the officers were entitled to qualified immunity on the unreasonable seizure charge, and the officers were entitled to official immunity (meaning the city was entitled to vicarious official immunity) on the wrongful death charge. The district court granted the motion for summary judgment and dismissed with prejudice all counts of the complaint. Ms. Smith timely appealed.

## II. DISCUSSION

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. We review de novo a grant of summary judgment, including a "finding of qualified immunity." Amrine v. Brooks, 522 F.3d 823, 830 (8th Cir. 2008). We view "the evidence in the light most favorable to the nonmoving party." Id.[4]

---

[3]Ms. Smith does not appeal the district court's dismissal of a retaliation claim against Officer Devick.

[4]While we view the facts in a light most favorable to Ms. Smith, she expresses concern that the only witnesses available to tell Smith's story are the police officers. Ms. Smith contends, "In reaching its decision, the district court relied too heavily" on some of the officers' testimony, noting the officers "are interested parties in the litigation." Like many deadly force cases, this case "pose[s] a unique evidentiary problem because the police officer defendants and their colleagues are . . . the only surviving eyewitnesses, while the person most likely to contradict their story is dead." Ludwig v. Anderson, 54 F.3d 465, 470 n.3 (8th Cir. 1995).

-4-

**B. Qualified Immunity and Excessive Force**

"Qualified immunity shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Thus qualified-immunity analysis "involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Mitchell v. Shearrer, 729 F.3d 1070, 1074 (8th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Ashcroft v. al-Kidd, 563 U.S. ___, ___, 131 S. Ct. 2074, 2080 (2011) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). We elect to address the "clearly established" qualified-immunity prong at the outset here, because it is dispositive of the case. Harlow, 457 U.S. at 818.

"Although the defendant bears the burden of proof for this affirmative defense [of qualified immunity], the plaintiff must demonstrate that the law was clearly established." Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007). "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Mitchell, 729 F.3d at 1076 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Al-Kidd, 563 U.S. at ___, 131 S. Ct. at

2083.  We are cautious "not to define clearly established law at a high level of generality."  Id. at ___, 131 S. Ct. at 2084.

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis omitted).[5]  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Id. at 396-97.  In a qualified-immunity analysis,

> [b]ecause the focus is on whether the officer had fair notice that [the] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

Brosseau, 543 U.S. at 198.  "Graham and [Tennessee v.] Garner, [471 U.S. 1 (1985),] following the lead of the Fourth Amendment's text, are cast at a high level of generality. . . .  Of course, in an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law."  Brosseau, 543 U.S. at 199.  But, as here, when a case is not "obvious," a court must "ask whether . . . it was 'clearly established' in this more 'particularized' sense" that the officers' actions violated Smith's Fourth Amendment right.  Id. at 199-200 (quoting Saucier, 533 U.S. at 202).

---

[5]"The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.

### 1.     Officer Devick's Initial Encounter

The district court granted Officer Devick qualified immunity regarding his actions during his initial, solo encounter with Smith. As to the clearly established prong of the qualified-immunity analysis, the district court found "a reasonable officer faced with the same circumstances would not have known that the decision to kick and hit Smith in an attempt to detain him clearly violated the Fourth Amendment."

Ms. Smith argues it was objectively unreasonable for Officer Devick to approach Smith and then hit and kick him when Smith "was attempting to surrender." She contends Smith stopped and faced Officer Devick, without a rifle, and did not behave aggressively by approaching Officer Devick. In support of her argument, Ms. Smith submitted an expert report by Dan Montgomery, former Chief of Police of Westminster, Colorado. Montgomery opined, "Mr. Smith appeared to be complying up until the point that Officer Devick approached him, kicked him and then struck him in the head. At that point, Mr. Smith fled." While Officer Devick readily admits Smith stopped his initial flight, Smith did not comply with Officer Devick's orders to get down on the ground. Officer Devick said Smith "took a defensive stance" and did not allow Officer Devick to effectuate the arrest. Montgomery reported Officer Devick "was only 15 feet away when he started moving towards Mr. Smith *ordering him to the ground*." (Emphasis added). Defendants maintain, "Devick believed it imperative to get Smith handcuffed so that he could not reach any weapon." Montgomery acknowledged, "I can understand the necessity of getting . . . [Mr. Smith] handcuffed and under control, and I can understand the officers' concerns that Mr. Smith might possibly have a handgun or other weapon in his waistband."

Thus in the "particularized" situation here, an officer attempted to effectuate an arrest by ordering the suspect to the ground, that is, a large and potentially armed man who was suspected of domestic abuse and making threats with a gun. The man refused to comply with the officer's orders. To get this suspect to the ground and

-7-

apply handcuffs in order to control the suspect and protect the police and the public, the officer approached the suspect and attempted to subdue him with a hit and a kick, not deadly force. Ms. Smith has not cited any case that would render the "constitutional question beyond debate" and would put Officer Devick on notice that such actions during this first encounter would violate Smith's constitutional right to be free from unreasonable seizure. Al-Kidd, 563 U.S. at ___, 131 S. Ct. at 2083. Ms. Smith only cites Montgomery's obviously hindsight-based report, which does not constitute clearly established law. Because we do not find any clearly established law supporting Ms. Smith's claim, and any violation is not obvious, Officer Devick is entitled to qualified immunity for his actions during his initial encounter with Smith.

### 2. Officers' Second Encounter

Although the district court determined the officers' actions were reasonable and did not expressly consider whether the officers' conduct during the second confrontation entitled them to qualified immunity, we "may affirm on any grounds supported by the record." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009). As with the first encounter with Officer Devick alone, we choose to begin with the clearly established prong of the qualified-immunity analysis.

The officers emphasize the fact that each officer's actions must be evaluated separately. "'Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed.' Section 1983 does not sanction tort by association." Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805-06 (8th Cir. 2010) (quoting Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006)). "An officer may be held liable only for his or her own use of excessive force." Smith v. Kan. City, Mo. Police Dep't, 586 F.3d 576, 581 (8th Cir. 2009).

On appeal, Ms. Smith differentiates the actions of the individual officers. For example, she states, "Defendants Brandt and McCarthy tased [Smith] eight times for

40 seconds or more."[6]  "Devick applied six knee strikes to Smith's right side.  He also attempted to apply a neck restraint to the left side of Smith's neck, laying across the top of his body and forcing his arm under Smith's chin."  "Defendant Humphrey smashed the butt of his rifle into the center of Smith's back.  He also punched Smith on the right side of his face two to three times."  "In addition to tasing Smith at least three times, apparently with no effect, McCarthy hit [Smith] three times in the right side of his head while he was lying across Smith's body."  "While Defendant Escobar did not hit or tase Smith he assisted in keeping Smith under the load of the Defendants' bodies."

As with the first part of the encounter with Officer Devick alone, Ms. Smith does not cite case law clearly establishing that any of the officers' actions were unconstitutional as of December 2008.  The officers claim, correctly it seems, "Appellant's analysis of the officers' qualified immunity argument utterly misses the crucial issue:  there is no case law which informs these officers that they were on notice that the punches, kicks, knee strikes and tasers they used on Smith were unconstitutional."[7]

---

[6]The officers dispute whether all the attempted tases made contact with Smith. For the purposes of this motion, we view the evidence in the light most favorable to Ms. Smith.

[7]The officers cite several cases in their brief, including district court opinions in the Eighth Circuit, where similar or more severe actions by other officers were not found to be unconstitutional.  See, e.g., Parks v. Pomeroy, 387 F.3d 949, 957-58 (8th Cir. 2004) ("[T]he physical struggle between [arrestee and first officer] was hostile and intense, the circumstances were extremely volatile and potentially deadly, and the events were evolving rapidly.  Therefore, notwithstanding plaintiff's citation of arguably contrary Fourth Amendment cases, we hold, upon *de novo* review, that—given the state of the law at the time and the particular facts of this case—[second officer] did not violate a *clearly established* constitutional right" when he fatally shot arrestee.); Neal-Lomax v. Las Vegas Metro. Police Dep't, 574 F. Supp. 2d 1170, 1187 (D. Nev. 2008) ("Plaintiffs point to no clearly established law that

Ms. Smith's counsel conceded at oral argument that the case law regarding tasers, a relatively new technology, is "evolving." We suspect, even without specific case law outlining a definitive number of constitutionally validated taser probes administered, an "obvious" case of excessive force could still be established under the clearly established prong. See Brosseau, 543 U.S. at 199. But this case is not such an obvious case. Ms. Smith has not cited any case, much less any case that could cast the "constitutional question beyond debate," Al-Kidd, 563 U.S. at ___, 131 S. Ct. at 2083, such that any of the five officers would be on notice that his actions during the second part of the arrest violated Smith's constitutional right to be free from unreasonable seizure.[8] Because we find none, and these case facts do not show an obvious constitutional violation, each officer is entitled to qualified immunity for his actions during the second encounter with Smith. The alleged conduct, even if unconstitutional, was not clearly established as such when it occurred.

## C. Minnesota Wrongful Death Claim

Ms. Smith also brought a wrongful death action under Minn. Stat. § 573.02.

> As distinguished from the "qualified immunity" afforded peace officers when addressing 42 U.S.C. § 1983 claims, under Minnesota law a public

---

multiple Taser applications in short succession on a struggling suspect constitute excessive force such that a reasonable officer in Rader's position would know Rader's conduct was unlawful."), aff'd, 371 F. App'x 752 (9th Cir. 2010) (unpublished memorandum opinion).

[8]In her reply brief, Ms. Smith "point[s] us to a number of other cases . . . that postdate the conduct in question . . . . These decisions, of course, could not have given fair notice to [the officers] and are of no use in the clearly established inquiry." Brosseau, 543 U.S. at 200 n.4. Appellees moved to strike these portions of Ms. Smith's reply brief that reference cases not cited to the district court in support of her contention that the qualified-immunity prong is satisfied. The motion to strike is denied as moot.

official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion. Generally, police officers are classified as discretionary officers entitled to that immunity.

Johnson v. Morris, 453 N.W.2d 31, 41-42 (Minn. 1990) (en banc) (internal citations omitted). "Discretionary conduct is clearly *not* protected if the official committed a willful or malicious wrong," but "[t]he doctrine protects honest law enforcement efforts." Elwood v. Rice Cnty., 423 N.W.2d 671, 679 (Minn. 1988) (en banc). While the issue of malice may raise a question for the jury, Minnesota courts rule in favor of a defendant when "no reasonable jury could find the [officers] acted with bad faith or malicious intent." Id. "'In determining whether an official has committed a malicious wrong, we consider whether the official has intentionally committed an act that he or she had reason to believe is prohibited.'" Hassan v. City of Minneapolis, Minn., 489 F.3d 914, 920 (8th Cir. 2007) (quoting State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571-72 (Minn. 1994) (en banc)). This determination "'contemplates less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions.'" Id. (quoting Beaulieu, 518 N.W.2d at 571).

The district court found Ms. Smith "has not put forth evidence sufficient to show that the Defendant Officers intentionally apprehended Smith in a way that they believed was prohibited by law." Based on the evidence and the reasoning we discussed previously, we agree. We affirm the district court's grant of official immunity and dismissal of the wrongful death claim against the individual officers. Consequently, we also affirm the district court's dismissal of the vicarious liability claim against the city. See, e.g., Schroeder v. St. Louis Cnty., 708 N.W.2d 497, 508 (Minn. 2006) (en banc) ("In general, when a public official is found to be immune from suit on a particular issue, his government employer will enjoy vicarious official immunity from a suit arising from the employee's conduct.").

-11-

## III.  CONCLUSION

Despite our sympathy for Ms. Smith in the loss of her son, the doctrines of qualified immunity and Minnesota official immunity require us to affirm the district court's grant of summary judgment to the officers.

_____