# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2818
_____

Ashley Quinones, as Trustee for and Brian Jesus Quinones-Rosario, Brian,

*Plaintiff - Appellant*,

v.

City of Edina, Minnesota; City of Richfield, Minnesota; Benjamin Wenande, all individuals being sued in their individual and official capacity; Nicholas Pedersen, all individuals being sued in their individual and official capacity; Joseph Carroll, all individuals being sued in their individual and official capacity; Macabe Stariha, all individuals being sued in their individual and official capacity; Dylan Schultz, all individuals being sued in their individual and official capacity,

*Defendants - Appellees*.
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 14, 2023
Filed: August 16, 2023
_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

This appeal concerns a use of deadly force by police officers against a man wielding a large knife. Officers shot and killed Brian Quinones-Rosario as he approached officers with the knife drawn. His widow Ashley Quinones, as trustee, sued the officers and their employing municipalities. She alleged an excessive use of force that resulted in an unreasonable seizure under the Fourth and Fourteenth Amendments. The district court[*] concluded that the officers did not commit a constitutional violation, and granted judgment for the officers and the municipalities. Quinones appeals, and we affirm.

I.

The episode began when Quinones-Rosario drove away from his home in Edina, Minnesota, on a rainy night in September 2019. Officer Nicholas Pedersen was on patrol, and he observed Quinones-Rosario driving above the speed limit and turning at a red light without signaling or stopping. Pedersen activated his siren to effect a traffic stop, but Quinones-Rosario kept driving. Pedersen called for assistance.

Quinones-Rosario drove into the neighboring city of Richfield, and several Richfield officers joined the pursuit. Quinones-Rosario continued to drive erratically, and almost crashed into another vehicle at an intersection. Officer Pedersen witnessed this near collision, and he tried unsuccessfully to stop Quinones-Rosario by bumping the back of his car. Quinones-Rosario then braked abruptly, and Pedersen stopped his car next to Quinones-Rosario's vehicle.

_____

[*]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

Quinones-Rosario got out of his car and brandished a large kitchen knife. Officer Pedersen exited his car and drew his firearm. Quinones-Rosario raised the knife above his shoulder, pointed its blade at Pedersen, and approached Pedersen.

Pedersen quickly contacted other officers by radio. He first said that Quinones-Rosario had a gun, but promptly corrected himself to identify the weapon as a knife. Pedersen kept his firearm aimed at Quinones-Rosario, repeatedly directed him to drop the knife, and backpedaled away to a median in the road.

Within seconds, Officers Stariha and Schultz of Richfield arrived on the scene. They raced toward the encounter and heard Pedersen tell Quinones-Rosario to drop his knife. Quinones-Rosario put his head down and sprinted toward the officers with the raised knife.

Officer Schultz shot his taser at Quinones-Rosario with no effect. When Quinones-Rosario was approximately thirteen feet from Officer Pedersen, Pedersen and Stariha fired their guns at him. When the first shot was fired, Quinones-Rosario was running toward the officers at a speed of about 7.4 miles per hour, more than twice an average walking pace.

Meanwhile, Officer Carroll of Richfield and Officer Wenande of Edina arrived on the scene. After Officers Pedersen and Stariha fired at Quinones-Rosario, he slowed his pace, but did not drop the knife. He kept moving toward the officers, and approximately two seconds later, Officers Stariha, Schultz, Carroll, and Wenande fired their guns at him. In a period of about four seconds, the officers fired eighteen shots. Seven shots hit Quinones-Rosario, and he died from his injuries.

Ashley Quinones sued the five officers who fired shots. She alleged under 42 U.S.C. § 1983 that they used excessive force in violation of the Fourth and Fourteenth Amendments, and she asserted tort claims under Minnesota law. She also sued the

two cities that employed the officers, Edina and Richfield, alleging that each maintained an unconstitutional policy of failing to train and supervise their officers. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

The district court granted summary judgment for the officers and municipalities. The court concluded that the officers' use of force was objectively reasonable. The court dismissed the state law claims without prejudice. Quinones appeals the dismissal of her federal claims.

## II.

When the officers shot Quinones-Rosario, they "seized" him within the meaning of the Fourth Amendment. Quinones argues that the seizure was unreasonable because the officers used excessive force. The constitutional question, then, is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). To make that determination, we consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. The use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

Applying those principles, and viewing the facts in the light most favorable to Quinones, we conclude that the officers' use of force was objectively reasonable. Quinones-Rosario posed an imminent threat of death or serious physical injury to the officers. He aggressively wielded a knife that he refused to drop despite repeated commands to do so. He then charged at the officers with the knife. One officer deployed a non-lethal taser against him, but it had no effect.

The officers began firing their guns only when Quinones-Rosario was thirteen feet away from the nearest officer and moving toward him. The suspect was moving rapidly and would have reached the officers within seconds. The officers reasonably believed that Quinones-Rosario posed a serious threat to their safety. The officers fired more rounds when Quinones-Rosario survived the first round of shots and continued to approach the officers with the knife. Their actions were a reasonable defensive response under the circumstances. We have repeatedly concluded that "officers could use deadly force to stop a person armed with a bladed weapon if they reasonably believed the person could kill or seriously injure others." *Kong v. City of Burnsville*, 960 F.3d 985, 993 (8th Cir. 2020).

Quinones argues that the potential that her husband was attempting to commit suicide creates a question of fact that must be resolved by a jury. She cites a provision of Minnesota law requiring officers to exercise special care when interacting with persons suffering from mental health disabilities. And she invokes *Ludwig v. Anderson*, 54 F.3d 465 (8th Cir. 1995), where this court found genuine issues of material fact as to whether a mentally disturbed man with a knife posed a threat to others when an officer shot and killed him. But neither Minnesota law nor our decision in *Ludwig* undermines the conclusion that the officers here acted reasonably.

The plaintiff in *Ludwig* was 150 feet away from the nearest bystander and running further away when shot. The officer who shot the subject did not fear for his own safety, and fired at the man only to keep him from "possibly attempting" to approach the distant bystanders. *Id*. at 473. By contrast, as discussed, Quinones-Rosario was wielding a knife within thirteen feet or fewer of a police officer and approaching. Even assuming that he was mentally disturbed, and that officers should have known of his condition, our "cases establish that mental illness . . . does not reduce the immediate and significant threat a suspect poses." *Kong*, 960 F.3d at 993; *see Hassan v. City of Minneapolis*, 489 F.3d 914, 919 (8th Cir. 2007). There is no

-5-

genuine dispute of material fact regarding the decedent's mental state, because the officers acted reasonably even assuming knowledge of a troubled condition.

Also unavailing is Quinones's suggestion that Minnesota imposes a "higher legal standard" on law enforcement officers than "is known in most other American jurisdictions." Her federal claims are based on the federal constitution, and there is one uniform standard of reasonableness under the Fourth Amendment. The officers did not violate the Constitution, so they are entitled to judgment. The claims against the cities for causing a constitutional violation likewise fail for lack of a violation.

The judgment of the district court is affirmed.

_____